## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **2:22-cr-00066-JDL** |
| **JOSE ALFREDO MERCEDES** | ) | |
| **BOTELLO,** | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON THE DEFENDANT'S MOTION TO SUPPRESS

On May 18, 2022, Defendant Jose Alfredo Mercedes Botello was indicted for Possession with Intent to Distribute Fentanyl, in violation of 21 U.S.C.A. § 841(a)(1) (West 2022) (ECF No. 20).  Botello filed a Motion to Suppress (ECF No. 45) which seeks to suppress evidence of "the stop and search of the Defendant, the Defendant's vehicle, and subsequent identification, as well as any statements made by the Defendant."  ECF No. 45 at 1.  Botello requests that the Court hold an evidentiary hearing on his motion.  The Government opposes the motion and the request for a hearing, arguing that law enforcement had reasonable suspicion to stop the vehicle in which Botello was traveling and that an evidentiary hearing is not warranted because Botello has failed to show any disputed material facts.  In Botello's Reply to the Government's opposition, he maintains that an evidentiary hearing is warranted.

A telephonic case management conference (ECF No. 53) was held on December 13, 2022, and the parties subsequently met and conferred regarding evidentiary issues and agreed that Botello could file, at his discretion, a supplemental motion

(ECF No. 55).   Botello filed his Supplemental Motion to Suppress on December 28,
2022, and the motion has been fully briefed (ECF No. 60).

## I.  FACTUAL BACKGROUND

The parties' memoranda rely on the evidentiary record comprised of the
Exhibits attached to the Government's Response in Opposition to the Supplemental
Motion.   These include a redacted transcript of the interview conducted by FBI
Agents with the Confidential Informant (ECF No. 65-1) and the FBI Investigation
Report (ECF No. 65-2).

On March 25, 2022, FBI Agents executed a search warrant at a residence in
Lebanon, Maine, and interviewed a Confidential Informant ("CI")—the target of the
FBI's investigation—outside the residence in an unmarked FBI vehicle.   Prior to the
interview, the CI had received multiple calls on his phone from a contact identified
in his phone as "Runner," and the CI informed the Agents that the Runner would be
arriving soon to collect money and give him a "present."   ECF No. 65-1 at 10:19.   The
Agents asked the CI, "what's a typical present," and he responded: "I don't know.  He's
trying to push more stuff on me.  He's trying to push – trying to push more dope, and
. . . he won't take no for an answer."   *Id.* at 14:3-8.   The CI stated that the Runner
"keeps coming up and dropping more off and . . . try[ing] to make me pay more and
more."   *Id.* at 15:11-13.   While speaking with the Agents, the CI received a call from
"Runner," which he answered on speaker phone with the Agents present, and the
Runner informed the CI that he would be arriving in thirty-five minutes.

The CI told the Agents that the Runner had supplied "dope" to him in the past,
and the Runner and the Runner's supplier had been supplying the CI with controlled

substances for "approximately a year and a half." ECF 65-2 at 3. The CI described the types of controlled substances that the Agents would find in the residence, including the amount and location of each substance, which the CI claimed he had received from the Runner and the Runner's supplier. The CI told the Agents that normally the Runner would deliver approximately 25 "sticks," that he owed the Runner $750 for a previous delivery, and that even though he had told the Runner that he did not want to buy more, the Runner and the Runner's supplier continued to try and sell him drugs. The Agents asked: "Do you think he's coming with 25 [sticks] today," and the CI responded: "No, I don't – he's not coming with 25 today, because he's coming for his money." ECF No. 65-1 at 31:18-22.

The CI confirmed that the Runner was "a Hispanic male" who comes "[a] couple times a week," but he did not know the Runner's real name. *Id.* at 30:20-21, 31:13. The CI told the Agents that the Runner "typically arrived in a vehicle with Massachusetts license plates," but that he uses a different vehicle every time. ECF No. 65-2 at 2. The CI specified that the vehicle was "just going to be a car or a minivan." ECF No. 65-1 at 43:3-4. The CI also told the Agents that the Runner would usually send text messages to the CI about his estimated arrival time when he was planning a delivery.

The Agents then directed the CI to call the Runner to change their meeting location. When the CI proposed meeting somewhere else, the Runner refused and told the CI that he would arrive at the residence in approximately ten minutes. The Runner then sent the CI three additional updates via text message about his arrival time, with the final message informing the CI that he had arrived at approximately

3

8:48 a.m.  In the FBI Investigation Report, the Agent notes that "[a]t approximately 8:49[a.m.], a blue Ford Explorer with Massachusetts livery license plate . . . pulled onto" the street where the residence was located. [1]  ECF No. 65-2 at 3.  At this point, other Agents performed an investigatory stop of the Ford Explorer.

## II.  LEGAL ANALYSIS

I first address Botello's request for an evidentiary hearing, and then address Botello's arguments that law enforcement lacked reasonable articulable suspicion to stop the vehicle.

### A.  Evidentiary hearing

An evidentiary hearing on a defendant's motion to suppress "is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record.  Most importantly, the defendant must show that there are factual disputes which, if resolved in his favor, would entitle him to the requested relief."  *United States v. Cintron*, 724 F.3d 32, 36 (1st Cir. 2013) (quoting *United States v. Francois,* 715 F.3d 21, 32 (1st Cir. 2013)).  "The burden is on the defendant to allege facts, 'sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented."  *United States v. Calderon,* 77 F.3d 6, 9 (1st Cir. 1996) (quoting *United States v. Lewis,* 40 F.3d 1325, 1332 (1st Cir. 1994)).  "The district court has considerable discretion in determining the need for, and the utility

---

[1] After the CI received this message, it appears that Agents continued the interview with the CI while the vehicle stop occurred.  For the purposes of assessing whether law enforcement had reasonable suspicion to stop the vehicle, I do not consider any statements made by the CI that occurred following the vehicle stop.

of, evidentiary hearings . . . ." *United States v. Staula*, 80 F.3d 596, 603 (1st Cir. 1996).

Botello argues that an evidentiary hearing is required "where a defendant state[s] a colorable claim that evidence should be suppressed." ECF No. 60 at 7 (citing *United States v. Brink*, 39 F.3d 419, 425 (3d Cir. 1994)). He argues that "[f]actual findings relating to intent, observations, and actions of the law enforcement officers involved in the stop and search of the subject vehicle will be necessary in order to determine whether the law enforcement acted within Fourth Amendment parameters, and whether it had sufficient basis to stop and search the vehicle in which the Defendant was riding on the day in question."[2] *Id.* He also argues that "the credibility of the confidential informant . . . needs to be explored, and weighed by the Court in determining whether the evidence should be suppressed." *Id.* He concludes that there are material facts in dispute and a "significant disparity regarding the evidence," and he contends that he would be prejudiced without an opportunity to contest the Government's evidence. *Id.*

The Government contends that Botello's initial motion and his supplemental motion "fail to make 'a sufficient threshold showing that material[] facts were in doubt or dispute.'" ECF No. 64 at 2 (quoting *United States v. Vilches-Navarrete*, 523 F.3d 1, 15 (1st Cir. 2008)). The Government also argues that Botello fails to meet his

---

[2]  To the extent that Botello seeks to explore the subjective intent or motivations of the law enforcement officers at a hearing, the Court is foreclosed from considering this in its reasonableness determination in the context of brief investigatory stops. *See United States v. Ruidíaz*, 529 F.3d 25, 29 (1st Cir. 2008) ("Reasonableness in [the context of a brief investigatory stop] . . . must be judged according to objective criteria; it is not dependent on an individual officer's subjective motives.").

burden to allege sufficiently definite, specific, and nonconjectural facts that would allow the court to conclude that he has a substantial claim.

### 1. **Material facts in dispute**

Botello asserts that "material facts in this case are in dispute," but he has not identified a single, specific fact that he disputes. ECF No. 60 at 6. Instead, he argues that "[a] hearing would be necessary to ferret out the nature [and] extent of what occurred on the day in question, and determine which version of events was/is accurate." ECF No. 66 at 6. However, he has not offered any contradictory evidence or an alternative narrative of events that would justify the Court conducting a hearing to assess the conflicting nature of the evidence. Botello had an opportunity to contest the evidence put forth by the Government when he filed his Supplemental Motion to Suppress, but he appears to rely exclusively on the CI's interview transcript and the FBI Investigation Report to support his motion and does not offer additional information which might show a contradictory account of the essential facts.[3]

Botello also attempts to distinguish his case from *United States v. Vilches-Navarrette*, in which the First Circuit found that the defendant "merely presented the same statements by the [Coast Guard] as the Government had. [The defendant] did not dispute the Government's version of events and instead relied upon them. This makes an evidentiary hearing unnecessary since there were no material facts that were in dispute." 523 F.3d at 15. However, Botello does not indicate how he has done anything more than the defendant in *Vilches–Navarrete*. His supplemental motion

---

[3] Nowhere in his written submissions does Botello suggest that he does not know the identity of the CI.

cites to the CI's interview transcript and the FBI Investigation Report, and concludes that the Agents "were guessing" when they stopped the vehicle.  ECF No. 60 at 3. This argument does not dispute the Government's evidence, but rather goes to the substantive question of whether law enforcement lacked reasonable suspicion to stop the vehicle.  Similarly, the parties' conflicting characterizations of the length of the street where the vehicle was stopped and the number of houses on the street do not support the need for an evidentiary hearing because, as I will explain, even if Botello's characterization of the street and number of houses were accepted as true, it would not alter the conclusion that the stop was lawful.  And although Botello criticizes the Government's selection of statements from the CI's interview and disagrees with the Government's interpretation of these statements, this does not itself constitute a dispute of fact.  Accordingly, I find that there are no material facts in dispute.

I also find that the motion can reliably be resolved on the evidentiary record as now constituted, which includes the exact statements made by the CI to the Agents.  Because Botello has not disputed or challenged the recording or the transcription made of the recording, I can assess, in the aggregate, whether law enforcement had reasonable suspicion to stop the vehicle before the vehicle arrived at the CI's residence without the need for an evidentiary hearing.

## 2. Credibility of the CI

"Information provided to police by third parties may create reasonable suspicion if the information contains sufficient '"indicia of reliability."' *United States v. Jones*, 700 F.3d 615, 621 (1st Cir. 2012) (quoting *Alabama v. White*, 496 U.S. 325, 328 (1990)).  Courts assess various factors to determine an informant's credibility—

although no one factor decides the issue—including "the probable veracity or basis of knowledge of persons supplying hearsay information; whether the informant statements are self-authenticating; whether some or all of the informant's factual statements were corroborated wherever reasonable and practicable . . .; and whether a law enforcement affiant included a professional assessment of the facts related by the informant based on experience." *United States v. Greenburg*, 410 F.3d 63, 67 (1st Cir. 2005) (alteration in original) (quoting *United States v. Zayas-Diaz,* 95 F.3d 105, 111 (1st Cir. 1996)). "In evaluating the informant's credibility, [the First Circuit] first assess[es] the manner in which the informant provided the tip." When a law enforcement officer has "face-to-face contact" with the informant and has "the opportunity to question the informant personally about the tip and take measure of the informant's credibility," this "supports the informant's reliability." *Id*. As to the nature of the information provided, "[a] specific, first-hand account of possible criminal activity is a hallmark of a credible tip," as is a tip where "the informant implicat[es] himself in the wrongdoing." *Id*.

Here, there is nothing in the record that supports Botello's assertion that a hearing is warranted to test the credibility or reliability of the CI. Although the CI did not have a prior history of serving as an informant, the interview took place face-to-face; the CI offered self-incriminating statements about his own involvement in drug trafficking; he provided reasonably specific and detailed accounts of his history with the Runner; and the CI accurately predicted the time of arrival of the Runner in a vehicle with Massachusetts plates. Botello also has not offered a conflicting version of events that undermine the veracity of the CI's statements about the Runner's

involvement in criminal activity.  Botello's interest in confronting the CI in open court is reduced at this preliminary stage because the "informant's tip is employed not to weigh guilt, or even probable cause for a warrantless arrest, but simply to determine whether there is sufficient suspicion to warrant an investigatory stop[.]"  *United States v. Lewis*, 816 F. Supp. 789, 795 (D. Mass. 1993) (internal citation omitted) (citing *United States v. Jackson,* 918 F.2d 236, 240 (1st Cir.1990), *aff'd,* 40 F.3d 1325. Accordingly, I conclude that Botello has failed to demonstrate grounds for a hearing to assess the CI's credibility.

### 3.  Prejudice

Prior to filing his Supplemental Motion to Suppress, Botello claimed that he would be significantly prejudiced in his ability to properly contest the Government's evidence because he had no more than limited access to the Government's records, and that the records had not been submitted to the Court.  This is no longer the case. As noted by the Government, and not challenged by Botello, following the telephonic case management conference, Botello's counsel received copies of the Government's evidence and these documents have been filed with the Court in support of the Government's Response.

### B.    Reasonable suspicion to stop the vehicle

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  "The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest."  *United*

*States v. Arvizu*, 534 U.S. 266, 273 (2002).   "[A] police stop of a moving vehicle constitutes a seizure of the vehicle's occupants and therefore comes within the purview of the Fourth Amendment.   This principle applies equally to drivers and passengers."   *United States v. Woodrum*, 202 F.3d 1, 5 (1st Cir. 2000) (citations omitted).

"A   police   officer   can   conduct   a brief investigatory stop of   a   person or vehicle where the officer has a reasonable suspicion that criminal activity is afoot." *United States v. Perez*, 977 F.3d 163, 168 (1st Cir. 2020) (citing *Arvizu*, 534 U.S. at 273).   "To justify a stop under the reasonable-suspicion standard, the government must show 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'"   *Woodrum*, 202 F.3d at 6 (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)).   "[T]he level of suspicion the [reasonable suspicion] standard requires is . . . less than is necessary for probable cause."   *United States v. Ramdihall*, 859 F.3d 80, 90 (1st Cir. 2017) (first and second alterations in original) (alterations omitted) (quoting *Navarette v. California*, 572 U.S. 393, 397 (2014)).   "Reasonable suspicion requires more, however, than an 'inchoate and unparticularized suspicion or "hunch."'"   *Id.* at 91 (quoting *Terry*, 392 U.S. at 27).   *See also United States v. Dion*, 859 F.3d 114, 124 (1st Cir. 2017) ("No simple, mechanical formula tells us what reasonable suspicion is, though we know that it is less than probable cause and more than a naked hunch." (quoting *United States v. McGregor*, 650 F.3d 813, 821 (1st Cir. 2011))).

"A reviewing court must consider the 'totality of the circumstances' in determining whether the officer had a particularized and objective basis for

suspecting criminal activity, which may include inferences drawn from the officer's specialized training and experience." *Perez*, 977 F.3d at 168 (citing *Arvizu*, 534 U.S. at 273). A totality-of-circumstances analysis includes, but is not limited to, "various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers." *United States v. Arnott*, 758 F.3d 40, 44 (1st Cir. 2014) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)).

"[A] combination of independently innocent behaviors and circumstances, both general and specific, can create reasonable suspicion in certain cases." *Woodrum*, 202 F.3d at 7; *see also United States v. Ruidíaz*, 529 F.3d 25, 30 (1st Cir. 2008) ("Although any one of those facts, taken alone, might not have been sufficient to create reasonable suspicion, a fact that is innocuous in itself may in combination with other innocuous facts take on added significance." (citation omitted)). For example, in *United States v. Mercer*, 834 F.3d 39, 42-43, (1st Cir. 2016), the First Circuit affirmed the district court's denial of the defendant's motion to suppress, finding that at the time of the stop, the officers "reasonably suspected a relatively close association" between the defendant and an individual who was suspected to be engaged in drug trafficking. Officers also intercepted a phone call regarding a drug deal that would take place on a particular day at a particular location, and they subsequently observed interactions between the defendant and the individual at that location. *Id.* at 43. The First Circuit noted that while the defendant's behavior could have "'several potentially innocent explanations,' such facts could also 'reasonably give rise to a suspicion' of criminal activity when taking into account the totality of the

circumstances." *Id.* (citation omitted) (quoting *United States v. Tiru–Plaza*, 766 F.3d 111, 121 (1st Cir. 2014)).   Additionally, a court "must assess the presence of reasonable suspicion 'in a commonsense, case-by-case way, taking in the whole picture,'" *Dion*, 859 F.3d at 124 (quoting *McGregor*, 650 F.3d at 821), and should not undertake a "divide-and-conquer analysis" of each individual fact and whether there is an innocent explanation.  *Arvizu*, 534 U.S. at 274.

Based on the evidence presented, and for the reasons that follow, I find that law enforcement officers had reasonable suspicion to conduct a brief investigatory stop of the vehicle.   Under the totality of circumstances, there are specific and articulable facts to support a rational inference that the CI was an active drug dealer who had previously received drugs from a Runner who regularly brought controlled substances to the CI's residence.   Further, the Runner was in a vehicle that had turned onto the road on which the CI resided and was in relatively close proximity to the CI's residence in a vehicle with a Massachusetts license plate.   Based on the text messages that the CI received from his phone contact labelled "Runner," it was also reasonable for the Agents to infer that once the Runner said that he had arrived, the Runner would be traveling in the next vehicle to pull onto the street.   Whether the street was a mile long with 20 houses, as Botello contends in his supplemental motion, 700 feet long with 17-18 houses, as the Government contends, or a half-mile long as Botello contends in his reply memorandum**,** the timing of the vehicle's arrival, the direction in which it was traveling, and its close proximity to the CI's residence all contribute to a reasonable suspicion that the Runner would be in the vehicle.

Botello further argues that "[l]aw enforcement did not know what type, make, model, or color the vehicle the runner was supposedly travelling in, and were essentially guessing whether the vehicle they stopped was the one carrying the subject runner." ECF No. 60 at 2. He contends that the CI told the Agents that the Runner "only drove in cars or minivans," but law enforcement stopped a blue SUV. *Id.* He also argues that the Agents did not have an accurate physical description of the Runner because they only knew that he was a "Hispanic male," and contends that the Agents stopped the vehicle without confirming that any of the occupants matched the description. *Id.* However, Botello's characterization of the record essentially asks the Court to conduct a "divide-and-conquer" analysis of the facts. This, as described above, is expressly foreclosed under a "totality of circumstances" approach to determining whether law enforcement had reasonable suspicion to conduct a brief investigatory stop of a vehicle. Although the SUV turning onto the street where the CI lived was an isolated event which could have an innocent explanation, the other facts viewed in the aggregate—including the known arrival time of the Runner in a vehicle with Massachusetts plates—permitted  the Agents to rationally infer that the Runner was traveling in that SUV.

The Agents also had reasonable suspicion that the Runner was engaged in criminal activity. Botello argues that the CI's statements outlined "what may have occurred in the past" between the CI and the Runner but that "[t]here is no evidence that on the day in question that the runner was engaging in the same pattern of conduct the CI spoke of regarding alleged drug transactions . . . [and that the] best evidence reveals that the runner was engaging in behavior that was unique to this

particular day, and not part of any preestablished pattern." ECF No. 66 at 3. Botello also argues that "there was simply no evidence of criminal activity," citing to the CI's statements that the Runner was delivering a "gift," that the CI did not know what the gift was, that the purpose of the trip was to collect money, and that the CI did not want more drugs. ECF No. 60 at 4. Botello contends that "[i]f the runner had not met with the CI, and had not obtained any money, then there would be no evidence of illegal [activity that] could be seized. And, until the runner actually collected any money [from] the CI, the runner had not committed an illegal act." *Id.*

Botello's contention that there was no evidence of criminal activity is unpersuasive. While the CI stated that the Runner was coming to collect money, it was fair to infer from the entire conversation that the CI was referring to money associated with earlier drug transactions. In addition, the CI also told the Agents that the Runner was bringing a "present." ECF No. 65-1 at 10:19. The facts that the CI did not know for certain what the "present" would be, that he did not think the Runner would be carrying "25 sticks," and that he claimed he did not want to receive more controlled substances, do not detract from the fact that, as the CI also explained, the Runner was coming to collect money and was "trying to push more dope," and that the Runner would not "take no for an answer." ECF No. 65-1 at 14:4,7-8, 31:18-20. Considered as a whole, the information provided by the CI reasonably pointed to ongoing unlawful drug transactions between the Runner and the CI. *See Ruidíaz*, 529 F.3d at 30 (finding that "the individual facts, taken in the aggregate, seem sufficient to trigger a reasonable suspicion that some criminal activity was afoot—and that the defendant was involved").

Accordingly, the CI had described a pattern of previous interactions with the Runner in which the Runner arrived at the CI's residence carrying controlled substances. The Agents' experience and knowledge of drug trafficking activities would have allowed them to reasonably infer that the Runner was engaged in similar criminal activities on the day in question. Under a totality-of-circumstances analysis, the facts viewed in the aggregate created reasonable suspicion that the Runner would be carrying controlled substances.

Botello also argues that "[e]ven as of today, the CI has never verified that any of the occupants of the subject vehicle was actually the runner . . . [and] the CI has never identified the Defendant as the runner he expected to meet on March 25, 2022." ECF No. 60 at 3. The absence of an after-the-fact verification by the CI that Botello was the "Runner" with whom he spoke on the phone during the interview with the Agents is not material to my evaluation of whether, on the undisputed record, law enforcement had reasonable suspicion that criminal activity was occurring.

## C.    Suppression of other evidence following the vehicle stop

Botello also requests the suppression of evidence of the stop and seizure of the vehicle, and all of the statements that he made following the stop. The only mention of what occurred after the stop can be found in the Government's original reply (ECF No. 50) to Botello's motion, but those allegations are not reflected in the record. Botello has not offered sufficiently detailed, specific, or non-conjectural facts that would constitute a "substantial claim" that law enforcement violated his constitutional rights following the vehicle stop. *See e.g.*, *Calderon*, 77 F.3d at 9 (upholding the district court's determination that an evidentiary hearing was not

warranted because Defendant "gave no flesh [to his arguments] when he had the opportunity on the motion to suppress" and did not file affidavits in support of the motion or otherwise provide evidence of the allegedly coerced consent).  A defendant is required to make a threshold showing of disputed material facts and a substantial claim for suppression on which the defendant is likely to prevail.  Botello has not made this threshold showing here, offering only the conclusory allegation that the evidence should be suppressed because "[a] law enforcement officer cannot infringe upon an individual's rights and seize them to identify them unless the stop is consensual."  ECF No. 66 at 4.

### III. CONCLUSION

For the foregoing reasons, Defendant Jose Alfredo Mercedes Botello's Motion to Suppress (ECF No. 60) is **DENIED**. Botello's original Motion to Suppress (ECF No. 45) is **DENIED** as moot.

**SO ORDERED.**

**Dated:  March 1, 2023**


_____**/s/ JON D. LEVY**_____
**CHIEF U.S. DISTRICT JUDGE**